**COMP**
THOMAS CHRISTENSEN, ESQ.
Nevada Bar No. 2326
DAVID F. SAMPSON, ESQ.
Nevada Bar No. 6811
CHRISTENSEN LAW OFFICES, LLC
1000 S. Valley View Blvd.
Las Vegas, Nevada 89107
Attorney for Plaintiff,

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

ERENDIRA ESPERANZA
GUZMAN-IBARGUEN, individually;
ERENDIRA MEJIA-GUZMAN,
individually; MARIA FERNANDEZ
MEJIA-GUZMAN, individually;
TAMMY HARLESS as Special
Administrator for the Estate of
OSCAR ANICETO MEJIA-ESTRADA
        Plaintiffs,

v.

SUNRISE HOSPITAL AND MEDICAL
CENTER, LLC.; DOE Defendants
I through X and ROE CORPORATIONS
I through X,

        Defendants,

Case No.

JURY DEMAND REQUESTED

## COMPLAINT

COMES NOW the Plaintiffs, ERENDIRA ESPERANZA GUZMAN-IBARGUEN, ERENDIRA MEJIA-GUZMAN, MARIA FERNANDEZ MEJIA-GUZMAN, TAMMY HARLESS as Special Administrator for the Estate of Oscar Aniceto Mejia-Estrada, by and through DAVID F. SAMPSON, ESQ., of the law firm of CHRISTENSEN LAW OFFICES, LLC, and for their cause of action against the Defendants, and each of them, alleges as follows:

## PARTIES

1) At all relevant times, Plaintiff Tammy Harless as Special Administratrix for the Estate of Oscar Mejia was and is a United States citizen who was domiciled in the State of Nevada.

2) At all times relevant, Plaintiff ERENDIRA ESPERANZA GUZMAN-IBARGUEN was and is a Mexican citizen residing in Tampico, Mexico.

3) At all times relevant, Plaintiff ERENDIRA MEJIA-GUZMAN was and is a Mexican citizen residing in Tampico, Mexico.

4) At all times relevant, Plaintiff MARIA FERNANDEZ MEJIA-GUZMAN was and is a Mexican citizen residing in Tampico, Mexico.

5) Upon information and belief, it is alleged that at all times relevant hereto, Defendant, SUNRISE HOSPITAL AND MEDICAL CENTER, LLC ("Sunrise") was and is a private hospital and is domiciled within the State of Nevada.

6) The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE Defendants 1 through 10 and ROE CORPORATIONS 1 through 10 are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the defendants designated as DOE Defendants and ROE CORPORATIONS are responsible in some manner of the events and occurrences referenced in this Complaint, and/or owes money to Plaintiffs and/or may be affiliated with one of the other defendants or may claim some interest in the subject matter of this Complaint. Plaintiffs will ask leave of the Court to amend this Complaint and insert the true names and capacities of DOE Defendants 1 through 300

CHRISTENSEN LAW
www.injuryhelpnow.com

and ROE CORPORATIONS 1 though 300 when the identities of the same have been ascertained, and to join said Defendants in this action.

7) The acts performed by representatives of Defendants, SUNRISE whether such representatives have been individually names herein as a defendant, or are yet to be identified, were all ones which those representatives had the actual and/or apparent authority to perform, may have been within the scope of their employment, were of the kind they were authorized to perform, and were actuated at least in part by a desire to serve their employers, and therefore the entity defendants are liable for their acts pursuant to the doctrine of respondent superior.

8) **JURISDICTION AND VENUE**

9) All acts complained of herein occurred in Clark County, Nevada.

10) Jurisdiction is proper in this Court pursuant to the EMTALA, specifically 42 U.S.C. § 1395dd(d)(2)(A).

11) Jurisdiction is also proper in the Court pursuant to 28 U.S.C. § 1331, as this instant action requires the interpretation and application of a federal statute.

12) Venue is properly conferred on this Court pursuant to 28 U.S.C. § 1391 (b) because the Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claims alleged herein took place in this District.

13) Where applicable, all matters set forth herein are incorporated by reference in eh various causes of action which follow.

14) **GENERAL ALLEGATIONS**

15) On or about July 25, 2008, Medic West Ambulance was called and dispatched to Harrah's to respond to a complaint of a 48-year-old, Hispanic, Spanish speaking male who was displaying suicidal and homicidal ideation. Mr. Oscar Mejia stated "I want to kill myself and my family." "I got HIV and Hepatitis C from prostitutes." Mr. Oscar Mejia conveyed his complaints with the use of a Spanish Interpreter from Harrah's. The patient's chief complaint was listed on the report as Suicide Ideation and General Weakness. The patient was transferred to Sunrise Hospital and Medical Center Emergency Room for evaluation.

16) The decedent, Mr. Oscar Mejia was registered as an Emergency Room patient. His reason for visit is documented as Homicidal/Suicidal.

17) The decedent, Mr. Oscar Mejia was seen and examined by Defendant, Dr. Dennis. Dr. Dennis.

18) Defendant, Dr. Dennis note states "Pt was thought to be suicidal because of some statements he made at his hotel. He absolutely denies this." There is no documentation or reason to believe that any contact was made to either EMS or Harrah's to question the incident leading to the patient being brought to the emergency room. The report indicates he is concerned he might have contracted HIV through sexual intercourse, and has been concerned about it for a couple of months. He wants to be tested. The report documents that the patient's blood glucose level was 100. The patient did not have similar symptoms previously and he had not been recently seen or assessed. This entry contradicts the physician's statement that the patient has had this complaint for the last two months.

19) The review of the patient's symptom documented that the patient "has had weakness." "No suicidal thoughts." The rest of the systems review was unremarkable. Dr. Dennis documented the patient's past medical history as significant for Hypertension and Diabetes mellitus. He also documented that the patient has a history of alcohol use and that he resides in Mexico. Defendant, Dr. Dennis documented that the nursing notes had been reviewed. Physical examination was unremarkable with Dr. Dennis stating that the patient was alert and oriented x 3, his mood and affect were normal, speech was normal, cranial nerves were normal, he had a normal gait, no motor deficits and no sensory deficits. The section on Progress and Procedures states "With the help of a nurse who speaks Spanish fluently, the nurse is not identified, I discussed the reasons for the patient's visit today. He has a physician in Mexico and it would be more appropriate to have testing for HIV/Hepatitis at home." This assessment contradicts the EMS reports which state the patient was reported to be having the suicidal and homicidal ideation because of his fear of having contracted HIV/Hepatitis from prostitutes. The record continues, "He agrees to this and absolutely denies suicidal or homicidal ideation on multiple occasions." "He does not appear to have an acute/emergent medical condition today." This continues to contradict the patient's previous statements and concerns. The record states "Patient/Family counseled." "Discharged home in good condition. The nursing documentation reports that the patient arrived and discharged home alone. 7:56 AM - Vital signs are listed of Blood pressure 140/88, Heart rate 109 (tachycardic-fast), Respirations 20, Temperature 98.5 (oral) his oxygen saturation was listed as 97% to room air. The

patient was documented as being alert, and in no acute distress. The chief complaint was listed as "Dizziness (low back pain)" which contradicts the report from EMS and the stated report given at registration. The patient's past medical history was listed as Diabetes mellitus, Hypertension, no history of heart disease or lung disease. No infectious disease exposure, which also contradicts the report from EMS. His social history included patient being a previous smoker having quit smoking months ago, and heavy alcohol use "consumes beer daily and liquor daily." The functional assessment documented that Mr. Mejia as having "no impairments noted." His nutritional risk was listed as having no deficiencies. Patient did not report problems with abuse. The patient was listed as having no fall risk identified. The nurse noted the patient as having arrived by EMS and that this patient was the historian. Mr. Mejia was taken to "room hall 5."

20) An assessment was documented by Oscar Chaves, RN. This assessment documents the patient as being alert and in no acute distress. He is oriented x 3. The remainder of the assessment was unremarkable. The nursing triage and assessment documentation does not mention or address the patient's original complaint and reason for the security call from Harrah's or the EMS report of the patient being suicidal and homicidal. Nursing documentation by Oscar Chaves, RN. Documentation states, "Patient who denies suicidal attempt. Patient wants to go to his hotel." Nursing entry by Oscar Chaves, RN. Repeated vital signs are blood pressure 141/88, heart rate 87, respirations 18, and oxygen saturation 98% on room air. "Conditions at departure: improved. Patient reports pain level on departure as 0/10. Fall risk assessment completed. No fall risk identified. No learning barriers

present. Learning barriers note: patient left alert, oriented, awake. Denies suicidal attempt. Patient verbalizes understanding. Written instructions provided in English. The patient did not understand English as was clearly documented in several places that the patient was Spanish speaking only and the nurse documents that the discharge instructions were given to the patient in English. The patient was discharged to his hotel and unaccompanied at the time of discharge. The patient left the Emergency Department ambulatory, via taxi. The Discharge instructions were provide by and signed by Oscar Chaves, RN. The discharge instructions were written in English. The patient instructions stated "The patient's home medications have been reviewed by the Emergency Department Physician. No changes in your current home medications are recommended at this time. Understanding of these instructions verbalized by patient. Decedent, Mr. Mejia was given the following additional information, weakness." The instructions were signed by Mr. Mejia. The discharge instructions were not dated or timed.

21) The total time Mr. Mejia spent in the emergency room visit was 1 hour and 2 minutes on July 25, 2008.

22) At 12:40 A.M. on or about July 27, 2008 Mr. Mejia arrived to Sunrise Hospital and Medical Center via private vehicle and accompanied by family. Registration documented his reason for visit as "Depressed anxious here 2 day." The next of kin was listed as the patient's wife, Herindida Guzman. The person to notify in case of emergency was listed as "patient refused." At admissions, the Conditions of Admission and Authorization for Medical Treatment were completed in English

and were not signed by the patient or the patient's family, the signature was left blank. It was witnessed by registration staff.

23) At 12:35 AM, July 27, 2008, the Triage Nursing Assessment was provided by Nancy Beasley, RN. The decedent was given an Acuity level of 2. Vital signs were listed as blood pressure 171/92, Heart rate 80, Respiratory rate of 20, Temperature 98.2 and oxygen saturation of 98% on room air. Documentation demonstrates that he was alert and in no acute distress. His medication was listed as "Higrotin." He denied having medication allergies. History is documented as significant for Diabetes mellitus. His chief complaint was depression and anxiety and weak decreased sensitivity to legs. His pain level was rated at a 0/10. The patient denied smoking but did admit to "occasional alcohol use, consumes beer." Functional assessment is documented as no impairment noted. The nutritional risk assessment was documented as no deficiencies. The Patient was again rated as a No Fall Risk. This assessment is improper given the RN documented that the patient has depression and anxiety and weak decreased sensitivity to his legs and that he consumes beer daily. All four of these would identify the patient as a fall risk.

24) At 1:40 AM on July 27, 2008, the physical assessment was documented by Arlamay Rogers, RN. Arlamay Rogers, RN documented that the patient was brought to the room via stretcher and he was alert and in no acute distress. Speech was within normal limits. He had poor eye contact and "The patient appears to have altered thought processes (uncooperative.)" The patient appeared well-nourished, neat and clean. The rest of the physical exam was unremarkable.

25) At 2:13 AM on July 27, 2008. Arlamay Rogers, RN documents "Refused to use urinal. Physically confrontational. Clothing sent home with daughter."

26) At 3:25 AM on July 27, 2008 This next nursing entry stated "wife and daughter here. Spoke with MD re plan of care. Pt. cont to refuse to provide urine specimen. Has urinal at bedside."

27) At 4:14 AM on July 27, 2008 the documentation merely states "attempted to call report to psych hold area. RN admitting another pt. Will call her back."

28) At 4:19 AM on July 27, 2008 Documentation states "attempted to call report. Nurse not available."

29) At 4:40 AM on July 27, 2008, The Sunrise Suicide Risk Factor Scale was implemented by nursing. The total score possible is 35 and she scored the patient at a 7. Any score higher than a 12 would initiate a Case Management Referral for further assessment and determination of additional resources needed for the patient's safety and notify the physician.

30) At 5:25 AM on July 27, 2008 Nursing entry is provided by Lauren Hendricks, RN. She lists the patient's vital signs as Blood pressure 153/95, Heart rate 92, Respirations, 18, Temperature 97.6 oral and oxygen saturation is 100% on room air. "Patient gowned." The record also states, "Suicide precautions initiated: Q 15 minute checks performed." There is no documentation or flow sheet recording the suicide precautions and Q 15 minute checks. The record continues, "Clothing/valuables removed (via camera); Belonging with security)." The patient was oriented to the room and the rules of the unit. "The patient reports restlessness and anxiety that is moderate in severity." "The patient reports feelings of

depression that are moderate in severity. "Currently denies suicidal ideation or plan." "Alert. Affect appears normal. Patient appears agitated: hyperactive body language." "Respiratory distress present."

31) At 7:04 AM on July 27, 2008 "Drug UA (Urinalysis) sent to lab. Patient is calm and resting quietly." There is no documentation of the patient receiving the Q15 checks which has been ordered an hour and a half earlier.

32) At 9:10 AM on July 27, 2008 the nursing entry is documented by Marcelino A. Tacadena, RN. The vital signs are listed as blood pressure 161/97, heart rate 92, respirations 18, and temperature 97.6. "Patient reports current pain level as 0/10. The patient reports anxiety and restlessness. No respiratory distress. Patient waiting evaluation. Pt speaks Spanish only and trans by security. The record indicates the Patient has flight of ideas and confused and "delusional", does not want to contaminate the world."

33) At 12:35 PM on July 27, 2008 a lunch tray was given to the patient while he was "waiting for", but not yet admitted to the psych unit. He was waiting in the psych hold area which is "IN" the Emergency Department and still under the care of the Emergency Department Personnel. The patient was responsive at the time.

34) At 12:45 PM Oscar Mejia was found face down in bed by Tina Hayes certified nurse assistant with hands folded under him, near face. Mr. Mejia was unresponsive with faint pulse. Certified Nurse Assistant, Tina Hayes called Anthony Keily security and then they called the Emergency Department Nurse, Marc Tacodena. A respiratory tech then found 2 socks stuck to his mouth and Mr. Mejia was not responsive and code blue was then called. A code blue should have

been called immediately when the patient was first found to be unresponsive with faint pulse by Tina Hayes certified nurse assistant and not to do so was a violation of the standard of care. This entry was documented by Tina Hayes a Certified Nurse Assistant. Mr. Tacodena documented at 12:50 when he arrived to the patient's side, that the patient was unresponsive to pain and verbal stimuli, not breathing, feels cool to touch and face looked pale and blue. Mr. Tacodena then went "back" to the desk and called a code blue but was unable to overhead page. Other personnel then arrived. CPR was initiated either at 12:50, 12:53 or 12:55 depending on what part of the single page Code Blue Record one reads. This code blue record was filled out by only by Defendant, Nurse Struass RN.

35) This care, assessment and documentation demonstrated by this chart is completely below the minimum standards of care. It very clearly illustrates that the patient was frequently medically neglected in a reckless and callous manner and his health care rights were grossly violated and denied per the standard of care and EMTALA Federal Regulations were thus also violated starting from the time that an Emergency Medical Condition was diagnosed

36) The instant action is brought under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395 et, seq., ("EMTALA"), as Mr. Mejia went to Sunrise Emergency department requesting case for a medical emergency, in that he was having suicidal tendencies and was not provided proper screening or treatment as required under EMTALA.

37) Pursuant to 42 U.S.C § 1395(d)(2)(A), this instant action seeks damages for the personal harm suffered by Oscar Aniceto Mejia-Estrada as a result of the lack of screening and medical treatment.

38) As such cause of action is based upon a federal case of action, this instant action is brought outside the statutory caps for malpractice under Nevada state law.

39) This action also seeks damages as a result of the emotional distress inflicted upon Oscar Aniceto Mejia-Estrada for the humiliation they suffered as a result of Oscar's treatment by the Defendants, as well as the emotional distress inflicted upon Plaintiffs as a result of having to see Oscar suffer.

## FIRST CAUSE OF ACTION
## EMTALA VIOLATION FOR FAILURE TO SCREEN AND TREAT ABNEY
### (Against Defendant SUNRISE)

40) Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

41) EMTALA, specifically 42 U.S.C. §1395dd(a) states:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42) EMTALA, specifically 42 U.S.C. §1395dd(b) states:

> (b) Necessary stabilizing treatment for emergency medical conditions and labor
> (1) In general. If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—
> (A) within the staff and facilities available at the hospital,

CHRISTENSEN LAW

www.injuryhelpnow.com

for such further medical examination and such treatment as may be required to stabilize the medical condition, or
(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

43) EMTALA, specifically 42 U.S.C. §1395dd(b), states:

(e) Definitions. In this section:
(1) The term "emergency medical condition" means—
(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
(ii) serious impairment to bodily functions, or
(iii) serious dysfunction of any bodily organ or part;

(2) The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.
(3)(A) The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).
(B) The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), that the woman has delivered (including the placenta).

44) Defendant SUNRISE is a hospital which has an emergency department covered under EMTALA.

45) Upon information and belief, Defendant SUNRISE has entered into a provider

agreement under 42 U.S.C. § 1395cc.

46). As a result of the provider agreement, Defendant SUNRISE is obligated to comply with EMTALA.

47) On July 27, 2008, Oscar Mejia-Estrada came to the emergency department at SUNRISE.

48) Upon his arrival, Oscar had a serious medical condition.

49) Oscar requested an examination and treatment from SUNRISE.

50) Oscar was delusional with suicidal thoughts.

51) Plaintiffs notified SUNRISE on numerous occasions that Oscar needed medical assistance for his medical condition.

52) Despite such notifications, SUNRISE failed to provide Oscar with the appropriate medical screening to confirm that he was suicidal, or treat such condition.

53) Such failure to provide Oscar with a timely and appropriate medical screening for his medical condition is a violation of 42 U.S.C. § 1395dd(a).

54) Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Plaintiff's demand j judgment against Defendant SUNRISE, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

55) Plaintiffs have been required to retain the law firm of Law Offices of Christensen Law Offices, LLC to prosecute this action and are entitled to recover

attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

### ATTORNEY FEES

As a result of the Defendants' actions as set forth above, Plaintiffs have been required to retain the law firm, Christensen Law Offices, LLC, to prosecute this action and have incurred and will continue to incur costs and attorney fees for which the Plaintiff is entitled to a separate award pursuant to N.R.S 18.010, as well as any other applicable statute or rule, in an amount to be determined by the Court.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to Fed.R.Civ.P. 38(b).

///

///

///


CHRISTENSEN LAW
www.injuryhelpnow.com

# PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

1. For a judgment for the Plaintiffs for all money damages available in a sum to be determined;

3. For an award of attorney fees to the Plaintiff for his reasonable attorney's fees, court costs and necessary disbursements incurred in connection with this lawsuit; and,

4. For such other and further relief as the Court deems just and equitable.

DATED THIS ___ day of _____, 20__.

CHRISTENSEN LAW OFFICES, LLC

BY: _____
THOMAS CHRISTENSEN, ESQ.
Nevada Bar No. 2326
DAVID F. SAMPSON, ESQ.
Nevada Bar No. 6811
1000 S. Valley View Blvd.
Las Vegas, Nevada 89107
Attorney for Plaintiffs