# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ERINDIRA ESPERANZA GUZMAN-IBARGUEN, *et. al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNRISE HOSPITAL AND MEDICAL CENTER, *et. al.*,<br><br>Defendants. | Case No. 2:10-cv-1228-PMP-GWF<br>**Consolidated with:**<br>Case No. 2:10-cv-1983-PMP-GWF<br><br>**ORDER**<br><br>**Motion for Protective Order - #81** |

This matter is before the Court on Defendant Tina Hayes' Motion for Protective Order (#81), filed on August 9, 2011; Plaintiff's Response to Motion for Protective Order (#88), filed on August 17, 2011; and Defendant Hayes' Reply in Support of Her Motion for Protective Order (#90), filed on August 26, 2011.

## BACKGROUND

For purposes of Defendant Tina Hayes' Motion for Protective Order and this Order, the following facts are presumed to be true:

Plaintiffs' decedent Oscar Mejia-Estrada was admitted to Sunrise Hospital at approximately 12:40 A.M. on July 27, 2008 based on reports by family members that he was depressed and anxious. The hospital determined that Mr. Mejia-Estrada did not have an emergent medical condition, but due to his mental condition, he was considered a suicide risk. Mr. Mejia-Estrada was transferred to the hospital's Discharge and Observation Unit ("DOU") to be held until he could be evaluated by a representative from Southern Nevada Adult Mental Health and either transferred to a mental health treatment facility or discharged. "Suicide precautions" were instituted which required the hospital staff to check on Mejia-Estrada's condition every 15 minute. He was also

under constant video monitoring, which the Court assumes means that the hospital staff could observe Mr. Mejia-Estrada on a video monitor from the nurse's station. Mr. Mejia-Estrada was in the DOU for several hours awaiting the mental health evaluation.

Defendant Tina Hayes was employed as a nurse at Sunrise Hospital and was responsible for checking on Mr. Mejia-Estrada at 15 minute intervals. According to Defendants, at 12:35 P.M., Ms. Hayes provided Mr. Mejia-Estrada with his lunch tray. Ten minutes later at 12:45 P.M., Mr Mejia-Estrada was found unresponsive or unconscious. During the ensuing effort to resuscitate him, two socks were discovered in Mr Mejia-Estrada's throat. The effort to revive Mr. Mejia-Estrada was unsuccessful and he was declared dead at 1:00 P.M. Plaintiffs have asserted a negligence claim against Defendant Hayes and other employees of Sunrise Hospital, and against the hospital for their failure to prevent Mr. Mejia-Estrada's suicide.

The Plaintiff took Ms. Hayes' deposition on July 26, 2011. During the deposition, it was disclosed that Ms. Hayes' employment with Sunrise Hospital was terminated in July 2009. Ms. Hayes and her union disputed her termination and that dispute was eventually resolved in December 2010 by a confidential settlement agreement between Ms. Hayes, the union and Sunrise Hospital. Pursuant to the terms of the confidential settlement agreement, which was provided to the Court for *in camera* review, Ms. Hayes and the union agreed not to disclose to third persons the terms of the settlement agreement, her employment with the hospital or her separation from the hospital. Based on these provisions, Ms. Hayes refused to answer questions concerning the circumstances of her termination. Ms. Hayes did testify, however, that her termination did not have anything to do with Oscar Mejia-Estrada, the DOU, or her qualifications to perform her job as a nurse.

**DISCUSSION**

Defendants' counsel in this case, Jonquil L. Urdaz, Esq. has submitted an affidavit for the Court's *in camera* review in which Ms. Urdaz briefly describes the factual circumstances relating to Ms. Hayes' termination and the events which resulted in the confidential settlement agreement. Ms. Urdaz's summary of these matters indicates that Ms. Hayes' termination was not related to Mr. Mejia-Estrada's hospitalization, the operations of the DOU, or to Ms. Hayes' qualifications as a

nurse. While the Court has no reason to question Ms. Urdaz's veracity, it would prefer to see the actual termination records and/or an affidavit from Ms. Hayes or a managerial employee or officer of Sunrise Hospital who has personal knowledge, setting forth the circumstances relating to Ms. Hayes' termination. Such documents should also be submitted for *in camera* review by the Court.

Absent a showing of compelling need, the courts will generally enforce an agreement which makes the terms of a private settlement agreement confidential. *Davis v. The GEO Group*, 2011 WL 2941291, *1 (D.Colo. 2011). "Even when private confidentiality agreements are enforced, however, not all factual matters concerning the issues resolved by the contract will necessarily be muzzled; often courts will protect the terms of the agreement but will not allow a confidentiality agreement to prevent discovery directed to witnesses who can testify to otherwise admissible factual matters." *Id.*, citing *E.E.O.C. v. Astra U.S.A., Inc.,* 94 F.3d 738, 71 (1st Cir.1996) (covenant not to assist EEOC held invalid) and *Kalinauskas v. Wong,* 151 F.R.D. 363 ( D.Nev. 1993) (confidential settlement agreement between employer and another employee could not prevent plaintiff in a sexual discrimination action from discovering relevant factual information).

If Ms. Hayes' termination was related to Mr. Mejia-Estrada's hospitalization and suicide, Plaintiffs clearly would be entitled to discover such information notwithstanding the confidential settlement agreement between Ms. Hayes and Sunrise Hospital. Likewise, if Ms. Hayes' termination was related to her general job performance or professional qualifications as a nurse or nurse assistant, or was related to issues regarding the operations of the hospital, that could reasonably bear on the medical care that was or was not provided to Mr. Mejia-Estrada, then Plaintiffs' right to discover relevant facts would outweigh Defendants' interest in protecting the confidentiality of the settlement agreement. Based on the information presently before the Court, however, the disputed circumstances relating to Ms. Hayes' termination did not involve such matters and are therefore irrelevant.

Plaintiffs have suggested that they are entitled to discover the factual circumstances relating to Ms. Hayes' termination, regardless of its relationship to the facts of this case, because it may provide or lead to the discovery of admissible impeachment evidence. Rule 608(b) of the Federal Rules of Evidence provides that:

> Specific instances of the conduct of a witness for purposes of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Based on the information provided to the Court, the alleged conduct for which Ms. Hayes was terminated did not relate to her character for truthfulness or untruthfulness. Disclosure of that information is therefore not reasonably calculated to lead to the discovery of evidence that Plaintiffs could use for impeachment purposes at trial. Accordingly,

**IT IS HEREBY ORDERED** that Defendant shall provide to the Court for *in camera* review copies of the actual employment records regarding Defendant Hayes' termination of employment and/or an affidavit or declaration by Ms. Hayes or a representative of Defendant Sunrise Hospital who has personal knowledge, setting forth the relevant facts and circumstances concerning Defendant Hayes' termination of employment. Upon review of that information, the Court will issue an order regarding the requested protective order.

DATED this 12th day of September, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge